LEON A. CANNIZZARO, JR., Judge.
_JjThis case involves the appeal of an order pursuant to which John F. Kelly, III was required to pay attorney’s fees in connection with a suit brought to enjoin violations of the condominium declaration [1] (the “Condo Declaration”) of 525 Baronne Street Condominiums (the “Condo”). Jerry M. Graver, the owner of a condominium unit in the Condo, and 528 Baronne Owners Association, Inc. (the “Owners Association”) brought suit against Kelly Investment Group, L.L.C. (the “Kelly Group”), Mr. Kelly, who was the manager and sole member of the Kelly Group, and Joseph John LoGreco, Jr.[2] Mr. Graver and the Owners Association obtained an injunction against Mr. Kelly and the Kelly Group, and Mr. Kelly is now appealing the order requiring him to pay the plaintiffs’ attorney’s fees in connection with the injunction.
FACTS AND PROCEDURAL HISTORY
This case arose out of a dispute regarding Mr. Kelly’s use of a Condo unit | gowned by the Kelly Group. Mr. Graver, who owned a Condo unit across the hall from the Condo unit owned by the Kelly Group, and the Owners Association filed suit seeking to enjoin Mr. Kelly and the Kelly Group from violating provisions of the Condo Declaration.
Mr. Graver and the Owners Association alleged in their petition that Mr. Kelly and the Kelly Group had violated the provisions of the Condo Declaration by routinely renting the Kelly Group’s Condo unit on a daily or weekend basis. The Condo declaration prohibited the lease of any Condo unit for periods of less than ninety days.
The petition contained allegations that the renters of the Kelly Group Condo unit created a nuisance in violation of another provision of the Condo Declaration. The petition asserted that “[t]he various individuals who rent Unit 203 are coming to New Orleans for a weekend of partying, and are often loud, boisterous, and at all hours of the day and night, particularly in the late evening and early morning hours and the [sic] regularly disturb Mr. Graver and his use of his condominium.”
Mr. Graver and the Owners Association sought to enjoin the rentals of the Kelly Group’s Condo unit for less than ninety days and to enjoin any advertisement or solicitation of rentals of the Condo unit for less than ninety days. They also sought the payment of the reasonable attorney’s fees and costs, because the Condo Declaration provided that if the Owners Association prevailed in any proceeding arising out of an alleged default under the Condo Declaration, the Association was entitled to “recover the costs of the proceeding and such reasonable attorney’s fees as may be determined by the Court.”
After the petition was filed, a temporary restraining order was issued against Mr. Kelly and the Kelly Group enjoining them from renting the Condo unit owned Lby the Kelly Group for any time period of less *659 than ninety days. After the temporary restraining order was obtained and a hearing on an application for a preliminary injunction was held, Mr. Graver and the Owners Association obtained a permanent injunction, to which Mr. Kelly and the Kelly Group consented. According to the terms of the permanent injunction, Mr. Kelly and the Kelly Group were enjoined from violating the Condo Declaration by renting the Condo unit without complying with the requirements of the Condo Declaration and the rules and regulations of the Owners Association. Mr. Kelly and the Kelly Group were also required to cease advertising the Condo unit on the Internet, and they were further enjoined from advertising the Condo unit for rent for any period of less than three months.
After the permanent injunction was rendered, Mr. Graver and the Owners Association filed a rule to tax Mr. Kelly and the Kelly Group with the costs and attorney’s fees incurred in connection with obtaining the injunction. The trial court determined that attorney’s fees of $4,760.25 were reasonable in this case, and the court awarded that amount. In the order requiring the payment of the attorney’s fees, the trial court noted that the closing notary on the sale of the Condo unit owned by the Kelly Group had tendered to the plaintiffs’ attorney funds from the proceeds of the sale in the amount of $1,380.00[3]. The trial court then credited the amount tendered to the attorney against the award of the attorney’s fees. [¿Therefore, Mr. Kelly and the Kelly Group were ordered to pay $3,380.25 to satisfy the payment of the attorney’s fees awarded by the trial court.[4]
Three months after the order awarding attorney’s fees to the plaintiffs was signed, the plaintiffs filed a motion for contempt against Mr. Kelly in the trial court. The motion for contempt asserted that Mr. Kelly had not satisfied the order requiring Mr. Kelly to pay the plaintiffs’ attorney’s fees. After a hearing, the contempt motion was granted. In the order granting the motion, the trial court noted that as a result of the defendants’ failure to pay the attorney’s fees that were awarded and as a result of the difficulty in obtaining service on Mr. Kelly, individually and as the manager of the Kelly Group, the plaintiffs had incurred an additional $431.00 in court costs. The trial court then ordered Mr. Kelly and the Kelly Group to pay the plaintiffs’ attorney the sum of $3,811.25 and held that “[sjhould Defendants fail to fulfil [sic] this solidary obligation before October 31, 2004, Defendant, John F. Kelly, III shall be imprisoned for ten (10) days and ordered to post a bond in the amount of $3,811.25 in order to obtain release from this sentence.”
When the attorney’s fees were not paid within the time limit provided, the trial court issued an order for the attachment and subsequent incarceration of Mr. Kelly. After Mr. Kelly paid the attorney’s fees he *660 had been ordered to pay,[5] the trial court recalled the attachment that had been issued. The order recalling the ^attachment stated that the “Judgment of the Court dated November 10, 2003,” had been “satisfied.”
Mr. Kelly then filed a motion for a de-volutive appeal of the order granting the motion for contempt. That appeal is now before us.
DISCUSSION
Mr. Kelly and the Kelly Group raised a single assignment of error in their original brief. They contend that Mr. Kelly should not have been held personally liable for the debt of the Kelly Group. Their argument fails, however, because the judgment holding Mr. Kelly liable was rendered on November 10, 2003, and the instant appeal was not filed until over a year later. The November 10 judgment was never appealed, and it became a final judgment that could no longer be appealed when the delays for taking an appeal had elapsed. La. C.C.P. arts.2087[6] and 2123.[7] Mr. Kelly is liable for the payment of the attorney’s fees as set forth in the order awarding attorney’s fees that was signed on November 10, 2003. If Mr. Kelly thought that the judgment should not have been rendered against him personally, his remedy was to appeal the judgment in a timely matter. He did not do so, however. Therefore, this assignment of error is without merit.
| (¡We also note that there was no error in holding Mr. Kelly in contempt of court. Because he did not appeal the November 10 judgment and then refused to comply with it, he was properly held in contempt of court in the October 14, 2004 order. Therefore, we affirm the judgment of the trial court finding that Mr. Kelly was in contempt of court.[8]
In their reply brief, Mr. Kelly and the Kelly Group raised additional arguments. Under Rule 2-12.6 of the Uniform Rules'— Courts of Appeal, “[t]he appellant may file a reply brief, if he has timely filed an original brief, but it shall be strictly confined to rebuttal of points urged in the appellee’s brief.” The arguments in the reply brief do not conform to Rule 2-12.6. Therefore, they will not be considered.
*661 CONCLUSION
The assignment of error raised in the defendants’ brief is without merit. The November 10, 2003 judgment has been satisfied, and we affirm the finding that Mr. Kelly was in contempt.
FINDING OF CONTEMPT AFFIRMED; APPEAL OTHERWISE DISMISSED.

. A condominium declaration is defined in La. R.S. 9:1121.103(10) as the instrument by which immovable property is made subject to the Louisiana Condominium Act, La. R.S. 9:1121.101 et seq. In the instant case, the operative document was the Declaration Creating and Establishing A Condominium Regime for 528 Baronne Street Condominiums, as amended by the First Amendment to Declaration Creating and Establishing a Condominium Regime for 528 Baronne Street Condominiums by 528 Historic Development, L.L.C.

. The petition in this case alleged that Mr. LoGreco sold his Condo unit to the Kelly Group. The record does not specify the basis upon which he was sued.

. The plaintiffs had apparently filed a lien against the Condo unit owned by the Kelly Group as security for the payment of the judgment awarding attorney's fees. The plaintiffs’ brief in this case indicated that the closing notary was to have escrowed sufficient funds from the proceeds of the sale of the Condo unit until such time as the trial court determined the amount of the attorney’s fees that were owed. The closing notary failed to escrow the sale proceeds and instead paid $1,380.00 to the plaintiffs’ attorney in connection with the closing of the sale of the Condo unit and remitted the net sale proceeds to Mr. Kelly.

. The terms "plaintiffs” and “defendants” were transposed in the order that awarded the attorney’s fees. It is clear from the context in which the terms were used that the transposition was a typographical error, and the meaning of the order is clear.

. Mr. Kelly did not pay tire additional court costs awarded in the contempt order, because the plaintiffs agreed to accept only the amount of the attorney's fees awarded in the November 10, 2003 judgment and waived the payment of the additional costs.

. La. C.C.P. art. 2087(A) provides that except as otherwise provided by law, a devolutive appeal may be taken within sixty days of the expiration of (1) the delay for applying for a new trial or judgment notwithstanding the verdict, if a timely application for a new trial has not been made, or (2) the date notice of the trial court's refusal to grant a timely application for a new trial or judgment notwithstanding the verdict is mailed. A devolutive appeal does not suspend the effect or execution of the order or judgment being appealed.

. La. C.C.P. art. 2123(A) provides that that except as otherwise provided by law, a sus-pensive appeal may be taken within thirty days of the expiration of (1) tire delay for applying for a new trial or judgment notwithstanding the verdict, if a timely application for a new trial has not been made, or (2) the date notice of the tried court’s refusal to grant a timely application for a new trial or judgment notwithstanding the verdict is mailed. A suspensive appeal suspends the effect or execution of the order or judgment being appealed, and security for the appeal must be furnished within the thirty-day appeal period.

.Although Mr. Kelly and the Kelly Group appealed the October 14, 2004 order granting the motion for contempt, they did not raise the issue of whether it is permissible for a court to impose a penalty for contempt in the form of the judgment debtor’s imprisonment if the debtor refuses to pay a civil judgment. Therefore, we have not considered this issue.